UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN McKINLEY WEBB

    Plaintiff,                               Civil Action No. 14-12097

v.                                       HON. ARTHUR J. TARNOW
                                          U.S. District Judge
                                          HON. R. STEVEN WHALEN
COMMISSIONER OF SOCIAL        U.S. Magistrate Judge
SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff John McKinley Webb ("Plaintiff") brings this action under 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner denying his application for Disability Insurance Benefits ("DIB") under the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that Plaintiff's Motion for Summary Judgment be GRANTED to the extent that the case is remanded to the administrative level for further proceedings and that Defendant's Motion for Summary Judgment be DENIED.

## PROCEDURAL HISTORY

Plaintiff applied for DIB on September 25, 2012, alleging disability beginning on July

17, 2012 (Tr. 89-95). After the initial denial of benefits, Plaintiff requested an administrative hearing, held on August 19, 2013 before Administrative Law Judge ("ALJ") Mary Ann Poulose (Tr. 21). Plaintiff, represented by attorney Charles Palmer, testified by teleconference (Tr. 25-35). Vocational Expert ("VE") Shirley Powell also testified (Tr. 35-39). On August 30, 2013, ALJ Poulose found that Plaintiff was capable of his past relevant work as a telemarketer (Tr. 17). On March 25, 2014, the Appeals Council denied review (Tr. 1-3). Plaintiff filed for judicial review of the final decision on May 27, 2014.

## BACKGROUND FACTS

Plaintiff, born July 26, 1974, was 39 on the date of the ALJ's decision (Tr. 17, 89). He completed one year of college and worked previously as an auto detailer and as a telemarketer (Tr. 124). He alleges disability as a result of multiple sclerosis ("MS"), neck pain, and back problems (Tr. 123).

### A. Plaintiff's Testimony

Plaintiff offered the following testimony:

Plaintiff, right-handed, lived with a roommate (Tr. 25). He last worked as an auto detailer (Tr. 25). He stopped in July, 2012 after experiencing his "first attack" of MS (Tr. 25). His work as an auto detailer required him to lift up to 50 pounds (Tr. 25). He was fired because he was perceived as a "liability" (Tr. 25). In 2008, he worked briefly as a telemarketer (Tr. 26). In 1998, he worked as a Hi-Lo driver, requiring him to lift up to 60 pounds (Tr. 27).

On typical day, Plaintiff arose at 7:00 a.m., drank coffee, watched television, and alternated between performing household chores for short periods and resting (Tr. 27). Back and neck pain required him to recline between household chores (Tr. 27). He was able to grocery shop by leaning against the cart (Tr. 28). He experienced intense fatigue after a 15-minute shopping trip (Tr. 28). He used a cane for walking in public (Tr. 28). He currently took Rediff and Baclofen for symptoms of MS (Tr. 29). He experienced "flu-like" medication side effects beginning five hours after the injections and lasting for three to four hours (Tr. 30). His medication was prescribed by his treating neurologist (Tr. 29). He had recently been approved for Medicaid and was able to obtain better treatment than in the past (Tr. 30). He attended organized activities on an occasional basis (Tr. 30). He liked to read but experienced reading comprehension difficulties (Tr. 31). He was unable to walk for more than 10 minutes at a time (Tr. 31). He experienced constant leg and foot numbness (Tr. 31). He also experienced acute neck and lower back pain (Tr. 32). He was able to lift a gallon of milk, but was prone to gripping problems (Tr. 33). His condition was exacerbated by temperature extremes (Tr. 33). In addition, he experienced "memory issues" during hot weather (Tr. 33). He experienced a "really bad day[]" approximately once every two weeks (Tr. 33). He did not have problems interacting with his roommate, family members, or neighbors (Tr. 33).

In response to questioning by his attorney, Plaintiff testified that he experienced spasticity, "brain fog," confusion, numbness, and extremity tingling as a result of MS (Tr.

33-34). He experienced brain fog several times a week lasting anywhere between five minutes and two hours (Tr. 34). Walking even one block caused fatigue (Tr. 34). He estimated that he could perform activities allowing him to change positions at will for up to one hour before he needed to recline (Tr. 34). He was obliged to recline "six to seven times" each day for 20 to 30 minutes (Tr. 34-35). He reported sleep disturbances, noting that he felt like his leg was "glued to the mattress" (Tr. 35).

### B. Medical Evidence

#### 1. Treating Sources

In July, 2012, Plaintiff sought emergency treatment for right leg numbness and heaviness causing him to fall repeatedly (Tr. 170). He was admitted for diagnostic testing (Tr. 169). He exhibited a "spastic gait" on the right (Tr. 168). An MRI of the cervical spine showed degenerative disc disease with disc protrusion at C5-C6 and "possible demyelinating disease" (Tr. 165). Plaintiff was deemed "at risk for falls" (Tr. 163). He reported loss of bowel control on one occasion (Tr. 153). He was diagnosed four days later with "demyelinating disease of the central nervous system, unspecified" (Tr. 153).

The following month, neurologist Evanthia Bernitsas, M.D. noted that Plaintiff's symptoms were currently limited to "mild weakness and numbness" in the right leg (Tr. 178). She noted that Plaintiff was able to walk without a cane (Tr. 176). She noted "extensive lesions in the spine" (Tr. 178). In October, 2012, Dr. Bernitsas noted no changes since an August, 2012 appointment (Tr. 174). She recommended immunomodulatory

treatment and physical therapy as soon as Plaintiff obtained insurance (Tr. 175).

In November, 2012 chiropractor William D. Vecchioni noted that Plaintiff responded well to bi-daily adjustments in July and August, 2012 but experienced problems walking as of the end of treatment on August 20, 2012 (Tr. 183).

In January, 2013, Dr. Bernitsas noted that both the MRIs and spinal taps were consistent with a diagnosis of MS (Tr. 188). She opined that it was "imperative" that Plaintiff "have treatment and followup care" (Tr. 188). She noted that Plaintiff was unable to sit or stand for more than 10 minutes at a time (Tr. 188). She observed that he still used a cane and felt "frustrated" because he could not "do things that he used to do in the past" (Tr. 189). He reported sleep problems (Tr. 189). She recommended medication "to boost up his energy and to relieve his pain" (Tr. 190). In April, 2013, Dr. Bernitsas opined that Plaintiff did not experience concentrational problems (Tr. 197-199). In June, 2013, Dr. Bernitsas found that Plaintiff was disabled, noting that he required the use of a cane due to lower extremity numbness (Tr. 200).

### 2. Consultive and Non-examining Sources

In February, 2013, A. Chopra, M.D. reviewed the treating records through December, 2012 (Tr. 126). He found that Plaintiff could perform exertionally light work modified by a limitation on standing and walking to four hours[1] (Tr. 186). In June, 2013, an ALJ for the

---

[1] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or

Department of Human Services found that based on the medical evidence, Plaintiff was eligible for Medicaid benefits (Tr. 202-209). In support of the disability opinion, the adjudicator adopted Dr. Bernitsas' January, 2013 finding that Plaintiff was unable to stand or sit for more than 10 minutes at a time (Tr. 208).

### C. Vocational Testimony

VE Shirley Powell classified Plaintiff's past work as a porter as unskilled at the medium exertional level; telemarketer, semiskilled/sedentary; and hi-lo operator, heavy (medium as performed)/unskilled (Tr. 37). The ALJ then posed a question to the VE, describing a hypothetical individual of Plaintiff's age, education, and work experience:

> I want you to assume that the person is limited to light work that does not involve any hazards, so no unprotected heights, no hazardous machinery, no commercial driving, no operating of any foot controls, no climbing of any ladders, ropes or scaffolds. Frequent but not constant use of the upper hands - - upper extremities for handling or fingering, and avoiding concentrated exposures to temperature extremes (Tr. 37-38).

The VE stated that the restrictions would allow the individual to perform Plaintiff's past relevant work as a telemarketer (Tr. 38). The VE stated that the restrictions would also allow for the unskilled, exertionally light work of small parts assembler (2,500 jobs in the regional economy); electronics worker (700); and counter clerk (Tr. 3,000) (Tr. 38). The VE testified that the need to be "off task" for more than 10 percent of the workday or, the need to absent

---

carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

from work more than one day a month would preclude all of the above work (Tr. 38). The VE concluded by stating that her testimony was consistent with the information found in the Dictionary of Occupational Titles ("DOT") (Tr. 39).

### D. The ALJ's Decision

Citing Plaintiff's medical records, ALJ Poulose found that Plaintiff experienced the severe impairments of MS and degenerative disc disease of the cervical spine but that neither of the conditions met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 12). The ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform exertionally light work with the following restrictions:

> The claimant is limited to frequent use of the upper extremity for handling and fingering. The claimant should have no exposure to hazards, such as unprotected heights, heavy machinery, and commercial driving. The claimant should never use foot controls, or climb ladders, ropes, or scaffolds. The claimant should avoid concentrated exposure to temperature extremes (Tr. 13).

Citing the VE's job findings, the ALJ found that Plaintiff could perform his past relevant work as a telemarketer (Tr. 17).

The ALJ discounted Plaintiff's claims of disability, noting that although he professed to require the use of a cane, it had not been prescribed by a doctor (Tr. 15). She found that Plaintiff's allegations of "brain fog" were undermined by treating source records showing no mental limitation with "intact comprehension and intact fund of knowledge . . ." (Tr. 15). She rejected the June, 2013 disability opinion by Plaintiff's neurologist, finding that it was

based on Plaintiff's "subjective complaints rather than the medical findings" (Tr. 16).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy.  20 C.F.R. §416.920(a).  The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## **ANALYSIS**

Plaintiff assigns error to a number of the ALJ's findings.  He faults the ALJ for improperly relying on the December, 2012 findings of a Single Decision Maker ("SDM") in composing the RFC.  *Plaintiff's Brief,* 9, *Docket #17*.  He argues that the ALJ erred by rejecting Dr. Bernitas' January, 2013 finding that he was unable to sit or stand for more than 10 minutes.  *Id.* at 10.  He contends that Dr. Bernitas' treating opinion was supported by imaging studies and the objective clinical testing and observations.  He notes that Dr. Bernitas' opinion is consistent with his own allegations of fatigue and exertional and postural limitations.  *Id.* at 11.  Finally, Plaintiff argues that the ALJ erred by failing to accord any

weight to the June, 2013 finding of disability by the Department of Human Services. *Id.* at 14.

## The Treating Physician Analysis

### 1. Basic Principles

An opinion of limitation or disability by a treating source is entitled to deference. "[I]f the opinion of the claimant's treating physician is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, it must be given controlling weight." *Hensley v. Astrue,* 573 F. 3d 263, 266 (6th Cir. 2009)(internal quotation marks omitted)(citing *Wilson, supra,* 378 F.3d at 544. Further,

> [i]f the opinion of a treating source is not accorded controlling weight, an ALJ must apply certain factors--namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source--in determining what weight to give the opinion.

*Wilson,* at 544 (citing 20 C.F.R. 404.1527(c)(2-6)). The failure to provide "good reasons" for rejecting a treating physician's opinion constitutes reversible error. *Gayheart v. Commisioner of Social Security,* 710 F. 3d 365, 376 (6th Cir. 2013) (citing *Wilson,* at 544-446).

### 2. The Rejection of Dr. Bernitas' Opinion is Not Well Supported

The ALJ accorded "little weight" to Dr. Bernitas' January, 2013 opinion that Plaintiff was unable to sit or stand for more than 10 minutes at a time (Tr. 16). The ALJ stated that

the opinion was not consistent with "the clinical findings" (Tr. 16). She found that the opinion was based on Plaintiff's "subjective complaints rather than the medical findings" (Tr. 16). Instead, she adopted most of Dr. Chopra's February, 2013 non-examining conclusion that Plaintiff could perform a limited range of light work, but not Dr. Chopra's finding that Plaintiff was limited to four hours of walking and standing each day (Tr. 16). Instead, she found that Plaintiff was capable of walking or standing for up to *six* hours each day (Tr. 16).

The ALJ's rejection of Dr. Bernitas' opinion is problematic for multiple reasons. First, the imaging studies of the cervical spine and brain support Plaintiff's allegations of limitations caused by degenerative disc disease and MS (Tr. 165, 188, 195). While the ALJ cited treating record show "mild" lower extremity weakness, the same records also showed hyperreflexic movement and spasticity in the right lower extremity and upper extremity tremors (Tr. 192-195). Although Plaintiff exhibited only "mild" difficulty walking in April, 2013, a "mild" impairment in walking, combined with spasticity of the right lower limb, would be expected to inhibit his ability to walk even two hours a day as generally required by sedentary work (Tr. 192). The observation of lower extremity limitations and upper extremity tremors support both Dr. Bernitas' findings and Plaintiff's allegations of fatigue and physical limitation.

The ALJ's adoption of Dr. Chopra's finding that Plaintiff could perform light work contains independent grounds for remand. First, Dr. Chopra's conclusions are based almost

entirely on a Single Decision Maker's ("SDM's") December, 2012 non-examining review of the treating records (Tr. 47-50, 186). In an ALJ's determination, "RFC forms completed by SDMs are 'not opinion evidence'" *Lindsey v. Commissioner of Social Sec.*, 2013 WL 6095545, *6 (E.D.Mich. November 20, 2013)(*citing* The Programs Operations Manual System ("POMS") DI § 24510.05)). "'[U]nder the regulations and agency policy, SDM assessments have no place in an ALJ's disability determination.'" *Id.* (*citing White v. Comm'r of Soc. Sec.*, 2013 WL 4414727, *8 (E.D.Mich. Aug.14, 2013)). The fact that the ALJ purportedly cited Dr. Chopra (an acceptable medical source) rather than the SDM assessment does not cure the error (Tr. 16). Dr. Chopra agreed with all the SDM's findings except to find that Plaintiff should be limited to four hours (rather than six) standing and walking in an eight-hour workday (Tr. 186). The ALJ adopted Dr. Chopra's opinion in its entirety *except* the "four-hour" finding and instead, found that Plaintiff was capable of six-hours standing and walking consistent with the SDM (Tr. 16). While the ALJ took pains to state that Dr. Chopra had "affirmed" the SDM's findings, in fact, she selectively adopted Dr. Chopra's findings only so far as they agreed with the SDM. The *de facto* adoption of the SDM's findings is of particular concern, given that the remainder of medical transcript does not contain any consultive or treating opinion that Plaintiff was capable of walking two, much less six hours in an eight-hour workday.

Second, neither the SDM nor Dr. Chopra had benefit of Dr. Bernitas' January, 2013 treating opinion that Plaintiff was limited to no more than 10 minutes standing or sitting at

-12-

one time (Tr. 188). The SDM's December, 2012 findings were of course made prior to the January, 2013 limitations imposed by Dr. Bernitas. Dr. Chopra's February, 2013 findings, while made after Dr. Bernitas' issued her opinion, do not contain any reference to the treating opinion from the previous month (Tr. 188). "Updated" medical records are to be accorded more weight than older ones. *See Hamblin v. Apfel*, 2001 WL 345798, *2 (6th Cir. March 26, 2001)(affirming an ALJ's rejection of a treating physician's "outdated" opinion on the basis that a consultive physician had performed a more recent appraisal with contradicting findings). The Sixth Circuit's holding favoring the use of updated medical information is even more applicable in a case where the newer evidence was created by a treating physician. See *Sayles v. Barnhart*, 2004 WL 3008739, *23 (N.D.Ill. December 27, 2004) (adoption of "outdated and inadequate" non-treating findings grounds for remand). It is unclear how Dr. Chopra's finding would have differed had he considered the January, 2013 treating opinion. The failure to review the newer records is particularly critical, given the lack of a consultative examination and the paucity of treating records due to Plaintiff's lack of health insurance.

Finally, I note that in stark contrast to the present decision, the Department of Human Service accorded controlling weight to Dr. Bernitas' January, 2013 opinion (Tr. 202-209). To be sure, ALJ Poulose was not required to adopt the state agency opinion. 20 C.F.R. § 404.1527(e)(final responsibility for deciding disability rests with the Commissioner). Nonetheless, ALJ Poulose's reliance on an outdated non-examining source who did not have

access to a newer treating opinion warrants remand for further fact-finding. Further, I recommend that upon remand, the ALJ either recontact Plaintiff's treating sources for clarification of his condition or, if required, order a consultive examination pursuant to 20 C.F.R. § 416.912(e). In light of this updated information, the ALJ should also reconsider what weight to assign to the DHS disability determination.

I have also considered Plaintiff's request for a remand for benefits. However, while Plaintiff has presented a strong case for benefits, the errors discussed herein require additional fact-finding before reaching the question of whether an award of benefits is appropriate. *Faucher v. Secretary of Health and Human Services,* 17 F.3d 171 (6th Cir.1994).

## CONCLUSION

For the reasons stated above, I recommend that Plaintiff's Motion for Summary Judgment be GRANTED to the extent that the case is remanded to the administrative level for further proceedings consistent with this Report and Recommendation, and that Defendant's Motion for Summary Judgment be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th

Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/ R. Steven Whalen<br>
R. STEVEN WHALEN<br>
UNITED STATES MAGISTRATE JUDGE

Dated: May 20, 2015

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on May 20, 2015, electronically and/or by U.S. mail.

s/Carolyn M. Ciesla<br>
Case Manager to the<br>
Honorable R. Steven Whalen